### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

### UNITED STATES OF AMERICA,

v.                                              **Criminal No. 2:17-cr-00198-004**

### RALPH WHITE,
### Defendant.

### MEMORANDUM OF LAW IN SUPPORT OF
### MOTION FOR IMMEDIATE COMPASSIONATE RELEASE

NOW COMES Defendant Ralph White, by and through his counsel, John H. Tinney, Jr., and

offers this Memorandum of Law in Support of his Motion for Immediate Compassionate Release

pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

### STATEMENT OF FACTS

#### Procedural History

On November 14, 2017, a federal grand jury returned a 34 count Indictment charging eleven

individuals with multiple controlled substance crimes.  Mr. White was charged in a conspiracy count

and in 5 substantive counts, all of which were subsumed within the conspiracy count.  At the time the

Indictment was returned, Mr. White was serving an undischarged term of imprisonment from Wood

County, West Virginia.  Accordingly, a Writ of Habeas Corpus ad Prosequendum was issued and Mr.

White was transferred into federal custody on November 30, 2017.

Mr. White entered into a plea agreement with the United States on January 17, 2018 in which

he agreed to plead guilty to the conspiracy charge alleged in Count I of the Indictment.  In exchange,

the government agreed to dismiss the remaining substantive charges of the Indictment.  Defendant

appeared before this Court on February 12, 2018 and entered his plea of guilty to the charge of

Conspiracy to Distribute 100 grams or more of Heroin, as set forth in Count I of the Indictment.  The

Court accepted his plea of guilty and, after additional briefing on the issue, accepted the plea agreement.

Following the entry of his guilty plea, the United States Probation Office conducted its presentence investigation and a Pre-Sentence Investigation Report was prepared and the final draft issued on June 4, 2018. During his pre-sentence interview, Mr. White truthfully represented to the probation officer that he did not believe he was suffering from any physical ailments or medical conditions. Since his incarceration, Mr. White reports that he has contracted Hepititis C while incarcerated and that he is receiving treatment at FCI Elkton.

Mr. White appeared before this Court on June 18, 2018 for his sentencing hearing. The Court sentenced him to 60 months of imprisonment to be followed by a term of supervised release. Defendant was transferred into the custody of the Bureau of Prisons ("BOP") and the BOP assigned him to the minimum security prison of FCI Elkton in Marion, Ohio. Inmates at FCI Elkton live in dormitory style buildings with little or no opportunity to "social distance" as has been recommended by medical experts during the COVID-19 pandemic.

As of the date of this filing, Mr. White has spent approximately 40 months in custody; however, Defendant has been informed by BOP officials that due to the way the BOP classifies incarceration time, he will receive no credit for approximately 11 months of time he was detained prior to his transfer into BOP custody. Accordingly, although he has actually served approximately 40 months of his sentence, the BOP is only crediting him with 29 months of incarceration. In actuality, Mr. White has served approximately 66% of the sentence contemplated by this Court.

On or about April 9, 2020 Defendant wrote to the Warden of FCI Elkton requesting the relief sought in this Motion. As of this writing, Mr. White has received no response from the Warden.

## COVID-19 PANDEMIC

The United States is in the grip of a global pandemic. The extent of the spread of the corona virus is well documented in the press and has been repeatedly recognized in this district. Multiple General Orders have been entered essentially closing the courthouses to the public. In-person hearings have been forbidden and court hearings and jury trials have repeatedly been suspended. It has been generally recognized that institutions where large groups of people are forced to congregate represent one of the greatest threats of transmitting the corona virus. Penal institutions are absolute hotbeds for the spread of virus and the penal institutions in Ohio are reportedly among the hardest hit institutions in the country.

On April 29, 2020, PBS News Hour reported that of the total number of inmates tested for COVID-19, 70% tested positive.[1] The percentage of inmates testing positive may, in fact, be higher because very few federal inmates are being tested. On May 6, 2020, WKYC reported that FCI Elkton, the facility where Mr. White is incarcerated, had publicly reported the following:

1.   8 inmates have died due to COVID-19;
2.   74 inmates have been placed into isolation due to positive tests for COVID-19;
3.   19 inmates have been hospitalized for COVID-19;
4.   7 of those inmates have been placed on ventilators;
5.   Over 50 staff members have now tested positive for COVID-19.[2]

On April 3, 2020, the Attorney General of the United States issued a Memorandum For Director of Bureau of Prisons directing the BOP to prioritize the use of home confinement as a tool for combatting the dangers that COVID-19 poses to vulnerable inmates. The Attorney General stated:

> As you know, we are experiencing significant levels of infection at several of our facilities, including FCI Oakdale, FCI Danbury, and FCI Elkton. We have to move with dispatch in using home confinement,

---

[1] See, www.pbs.org/newshour/nation
[2] See, www.wkyc.com/article/news/investigations (May 6, 2020).

> where appropriate, to move vulnerable inmates out of these institutions. I would like you to give priority to these institutions, and others similarly affected, as you continue to process the remaining inmates who are eligible for home confinement under pre-CARES Act standards.[3]

The Attorney General further makes the finding that COVID-19 constitutes an emergency condition that is materially affecting the functioning of the Bureau of Prisons. *Id.* It is generally recognized that the spread of COVID-19 will continue to grow for the foreseeable future and that the prison population in the United States will be particularly susceptible to the virus due to the living conditions forced on inmates in penal institutions.

Recently, the United States District Court for the Northern District of Ohio addressed a class action emergency habeas action brought on behalf of FCI Elkton inmates. *See, Craig Wilson, et al., v. Mark Williams, et al., 4:20-cv-00794 (N.D. Ohio).* While noting the efforts that FCI Elkton was taking to limit the spread of the virus,[4] it concluded that "Elkton officials fight a losing battle. A losing battle for staff. A losing battle for inmates." *Id. at 3.* Furthermore, the Court recognized that the reported numbers of infected inmates, hospitalizations and deaths was most likely an under-representation of the true numbers, "given the paltry number of tests the federal government has made available for the testing of Elkton's inmates." *Id.*

## Analysis

The compassionate release statute states in pertinent part:

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after

---

[3] Memorandum from the Attorney General re: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19: April 3, 2020.

[4] The Court notes that the inmates dispute many of the institution's assertions regarding the conditions within FCI Elkton.

4

considering the factors set forth in 3553(a) to the extent that they are applicable, if it finds that –

(i) extraordinary and compelling reasons warrant such a reduction.

18 U.S.C. § 3582.

## Exhaustion of Administrative Remedies

Section 3582 requires a defendant seeking compassionate release to "exhaust all administrative remedies to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . .". Here, Mr. White made a substantive request for such relief to the warden of FCI Elkton on April 9, 2020. As of this filing, Mr. White has received no response from the warden. Accordingly, Defendant has satisfied the exhaustion requirement of §3582. Even if Mr. White has not met the technical requirements of exhaustion, requiring Defendant to continue to pursue administrative remedies would unduly prejudice Mr. White. COVID-19 is spreading through Ohio penal institutions at a rapid, if not unprecedented rate. Inmates and staff members alike are being infected in large numbers. At least 8 deaths have been officially attributed to the virus, and many more inmates have been isolated and hospitalized.

The United States Supreme Court has provided the following guidance regarding the exhaustion requirement for exigent situations such as this:

> In determining whether exhaustion is required, federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion. "[A]dministrative remedies need not be pursued if the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further.

*McCarthy v. Madigan*, 503 U.S. 140, 146 (1992). In this case, time is obviously of the essence. Penal institutions in Ohio are serving as petri dishes for the corona virus and the delay that would result in requiring Mr. White to continue to pursue administrative remedies would unduly prejudice him.

## Extraordinary and Compelling Reasons for Release

In order to determine if extraordinary and compelling reasons exist to release Mr. White, this

Court must determine if such a sentence reduction is "consistent with applicable policy statements

issued by the [United States] Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A); *Samy v. United States,*

*16-cr-20610-01, E.D. MI., Order Granting Petitioner's Motion for Reconsideration of Order Denying Compassionate*

*Release, ECF No. 88, 4/16/20.* The applicable policy statement is found in the Application Notes to

USSG § 1B1.13, which provides, in part:

> 1.  **Extraordinary and Compelling Reasons** – Provided the defendant meets the requirements of sub-division (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> **(A) Medical Condition of the Defendant**:
>
> (i) the defendant is suffering from a terminal illness (i.e. a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end stage organ disease, and advanced dementia.
>
> (ii)  The defendant is –
>> (I)  suffering from a serious physical or medical condition;
>> (II)  suffering from a serious functional or cognitive impairment; or
>> (III)  experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of the correctional facility and from which he or she is not expected to recover . . .
>
> **(D) Other Reasons** – As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13.

In this case, Mr. White presents "Other Reasons" sufficient to meet the standard for the

granting of his immediate compassionate release. Since his incarceration, Defendant has developed a

serious medical condition, hepatitis, that will compromise his immune system and make him more susceptible to contracting the COVID-19 virus. Further, the pervasive presence of this novel virus in the Elkton facility constitutes an "imminent danger" according to the federal prison workers' union! *See, e.g. Federal Prisons Pose Imminent Danger in Spreading COVID-19 Union Says*, Government Executive (4/6/2020),

www.govexec.com/oversight/2020/04/federal-prisons-pose-imminent-danger-spreading covid-19-union-says/164390/.

Ralph White was sentenced to 60 months incarceration. He has served approximately 40 months as of this filing. As is explicitly noted in his Presentence Investigation Report, Mr. White's substantive crime consisted of receiving and selling controlled substances in order to obtain enough of the drugs to support his own addiction. While incarcerated he has completed drug and substance abuse counseling offered by the BOP. He has never been alleged to have been violent or to have used firearms in conjunction with his controlled substance offenses. He does not pose a danger to any member of our community. An additional 20 months of incarceration in penal institutions riddled with a dangerous virus that has already claimed the lives of multiple inmates will not further the goals of sentencing. An additional 20 months of incarceration in such facilities will; however, endanger Mr. White's health, the health of other inmates, the health of prison staff and, by extension, the health of the people in the community who come into contact with prison staff members outside the Elkton prison facility.

## Request for Expedited Video or Telephonic Hearing

Defendant consents to a video or telephonic hearing on his motion as the Court may require. Further, given the nature of the request and the circumstances within FCI Elkton, Mr. White requests an expedited schedule and hearing on his motion.

WHEREFORE, Defendant Ralph White respectfully requests that this Court enter an Order granting his motion for immediate compassionate release from incarceration and to allow him to complete the remainder of his sentence on home confinement subject to whatever conditions this Court should deem appropriate.

Respectfully submitted,

RALPH WHITE


_/s/ John H. Tinney, Jr._
John H. Tinney, Jr. (WVSB #6970)
Hendrickson & Long PLLC
214 Capitol Street
Charleston, WV  25301
Tel:  304-346-5500
Fax:  304-346-5515
JTinney@handl.com

8

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of May, 2020, I electronically filed this

**"Memorandum of Law in Support of Motion for Immediate Compassionate Release"** with

the Clerk of the Court using the CM/ECF system which will send notification of such filing to the

following as follows:

John J. Frail, AUSA
United States District Court for the
Southern District of West Virginia
P.O. Box 1713
Charleston, WV 25301


*/s/ John H. Tinney, Jr.*
John H. Tinney, Jr. (W.Va. Bar # 6970