IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

v.      CRIMINAL ACTION NO. 2:17-cr-00198-4

RALPH WHITE

MEMORANDUM OPINION AND ORDER

A deadly pandemic provides extraordinary and compelling reasons for the world to take unprecedented measures to combat the spread of the lethal COVID-19 virus. This petitioner is locked down at the Federal Correctional Institution at Elkton. At that prison, the COVID-19 pandemic has struck with a vengeance, killing nine people and infecting almost 500 prisoners by some estimates and many staff. Approximately 25% of the inmates have tested positive for the virus. The question before this court is whether a federal prisoner who has been identified by the Bureau of Prisons as medically vulnerable to this deadly virus and who has petitioned this court for compassionate release has extraordinary and compelling reasons to justify his request pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). For the reasons that follow, Defendant Ralph White's Motion for Immediate Compassionate Release, [ECF No. 405], is **GRANTED**.

I. Background

On June 18, 2018, I sentenced Mr. White to a term of 60 months imprisonment followed by 4 years of supervised release for Conspiracy to Distribute 100 grams or more of Heroin, in violation of 21 U.S.C. § 846. [ECF No. 328]. Defendant is currently serving his sentence at Federal Correctional Institution ("FCI") Elkton. There is a dispute as to how much of his sentence he has already served, and the Defendant argues he has served at least 40 months imprisonment. Def.'s Mem. Supp. [ECF No. 406]. However, the Defendant incorrectly added time that he served for a state charge. Because of the way BOP calculates time served, he has served approximately 30 months incarceration. Gov't. Resp. [ECF No. 408]. According to the Bureau of Prisons ("BOP"), his projected release date is April 9, 2022. Since his incarceration, Mr. White has contracted Hepatitis C and is receiving treatment while at FCI Elkton. He has not had any disciplinary records while in prison and has completed drug and substance abuse counseling offered by BOP while incarcerated.

FCI Elkton is a low-security prison in Lisbon, Ohio. It is "designed to house approximately 2,000 inmates at the main facility and 500 inmates at the satellite facility." *Wilson v. Williams*, No. 20-3447, 2020 WL 3056217, at *2 (6th Cir. June 9, 2020). FCI Elkton has hosted a massive outbreak of COVID-19 among its inmates, and the "situation at FCI Elkton appears dire." *United States v. Brant*, No. 218CR20155TGBMKM1, 2020 WL 2850034, at *2 (E.D. Mich. June 2, 2020); *see also United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *9 (E.D.

2

Pa. Apr. 1, 2020) ("The situation at FCI Elkton in particular is alarming ... Elkton is filled to capacity and appears to have few tests.").

Judge Gwin of the Northern District of Ohio found, when issuing his April 22 preliminary injunction, that FCI Elkton's "'dorm-style' design guarantees that inmates remain in close proximity to one another," which makes it nearly impossible for inmates to socially distance. See Wilson v. Williams, No. 4:20-CV-00794, 2020 WL 1940882, at *1 (N.D. Ohio Apr. 22, 2020), enforcement granted, No. 4:20-CV-00794, 2020 WL 2542131 (N.D. Ohio May 19, 2020), and vacated, No. 20-3447, 2020 WL 3056217 (6th Cir. June 9, 2020); see also United States v. Bass, No. 1:10-CR-166 (LEK), 2020 WL 2831851, at *1 (N.D.N.Y. May 27, 2020) ("FCI Elkton has endured an outbreak of COVID-19 that has been exacerbated by features of the prison's internal architecture that inhibit social distancing."). Though FCI Elkton has claimed to have implemented measures to lessen the COVID-19 threat, Judge Gwin found that "the Elkton officials fight a losing battle. A losing battle for staff. A losing battle for inmates." Id. "With the shockingly limited available testing and the inability to distance inmates, COVID-19 is going to continue to spread, not only among the inmate population, but also among the staff." Id. Indeed, Judge Gwin's prophetic warning has proven correct. At the time he granted the preliminary injunction on April 22, FCI Elkton had 59 confirmed COVID-19 cases among inmates and 46 cases among staff. See id. As of June 11, 2020, there are 436 active COVID-19 cases among inmates, 7 cases among staff, and 9 inmate deaths. COVID-19 Cases, Fed. Bureau of

3

Prisons, https://www.bop.gov/coronavirus (last visited June 11, 2020).[1] FCI Elkton has the second highest mortality rate of any prison. *See id.*

On April 3, 2020, Attorney General William Barr directed BOP to identify inmates considered medically vulnerable to COVID-19 at a number of prisons, including FCI Elkton. Prison officials identified Mr. White as one of its medically vulnerable inmates. *See* Ex. 1 [ECF No. 411].

On April 22, Judge Gwin granted a preliminary injunction to a subclass of medically vulnerable inmates, mandating that inmates in that subclass be immediately transferred out of FCI Elkton. *Wilson*, 2020 WL 1940882, at *10. On April 30, 2020, BOP submitted the Subclass List of 837 vulnerable inmates at FCI Elkton, which includes Mr. White. *Wilson*, No. 20-CV-794, [ECF No. 35-1] 3. On May 19, 2020, Judge Gwin granted a motion to enforce the April 22 preliminary injunction and ordered BOP to comply. *Wilson*, No. 20-CV-794, ("May 19 Order") [ECF No. 85]. However, on June 9, 2020, the Sixth Circuit vacated the preliminary injunction. *Wilson*, 2020 WL 3056217.

---

[1] According to news reports, the number is even higher—523 inmates have tested positive at FCI Elkton. *See Columbiana County reports 1 new COVID-19 death,* MAHONING MATTERS (June 10, 2020), https://www.mahoningmatters.com/local-news/columbiana-county-reports-1-new-covid-19-death-2424036; Julio Tullos, *523 inmates test positive for COVID-19 at Ohio federal prison*, FOX19 NOW, https://www.fox19.com/2020/06/05/inmates-test-positive-covid-ohio-federal-prison/. "The prison's total numbers of cases is the third-highest among federal prisons with confirmed cases. Its total number of deaths is the second-highest." *Columbiana County reports 1 new COVID-19 death,* MAHONING MATTERS (June 10, 2020), https://www.mahoningmatters.com/local-news/columbiana-county-reports-1-new-covid-19-death-2424036.

4

The Sixth Circuit, however, found in its majority opinion by Judge Gibbons that inmates at FCI Elkton face a substantial risk of serious harm and that "[t]he infection and fatality rates at Elkton have borne out the serious risk of COVID-19, despite the BOP's efforts." *Id.* at *7. The Sixth Circuit further explained that the "transmissibility of the COVID-19 virus in conjunction with Elkton's dormitory-style housing—which places inmates within feet of each other—and the medically-vulnerable subclass's health risks, presents a substantial risk that petitioners at Elkton will be infected with COVID-19 and have serious health effects as a result, including, and up to, death." *Id.* Chief Judge Cole, in his dissent, calling FCI Elkton an "epicenter of the pandemic within the federal prison system," further expounded on BOP's flaws in responding to the outbreak at Elkton. *Id.* at *13 (Cole, C.J., concurring in part and dissenting in part). Chief Judge Cole lamented that BOP's response "does not include a single phase that allows for meaningful social distancing," and has been inadequate in providing inmates personal protective equipment. *Id.* ("But the record reflects that inmates received four ounces of soap per week and only two disposable masks, and that the disinfectant provided was 'watered down.'"). "The government's assurances that the BOP's 'extraordinary actions' can protect inmates ring hollow given that these measures have already failed to prevent transmission of the disease." *Id.* (quoting *Rodriguez*, 2020 WL 1627331 at *8).

Mr. White requested relief from the Warden of FCI Elkton on April 9, 2020 and May 14, 2020. *Id.*; *see also* Exs. 2, 3 [ECF No. 411]. The Warden denied his request

5

on May 18, 2020 and June 9, 2020. Ex. 4 [ECF No. 411]; Ex. 1 [ECF No. 415]. Mr. White now asks the court for compassionate release to home confinement because of his underlying medical condition and the current public health crisis caused by COVID-19. [ECF No. 405]. A telephonic hearing was held on this matter on June 9, 2020 and June 12, 2020.

## II. Discussion

The First Step Act "embodies Congress's intent to reduce the Bureau of Prison's authority over compassionate release petitions and authorizes the district courts to exercise their independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." *United States v. Galloway*, No. CR RDB-10-0775, 2020 WL 2571172, at *3 (D. Md. May 21, 2020) (internal citations removed); *see also United States v. Stephenson*, No. 3:05-CR-00511, 2020 WL 2566760, at *5 (S.D. Iowa May 21, 2020) ("Unqualified deference to the BOP no longer makes sense now that the First Step Act has reduced the BOP's role.").

For me to reduce Mr. White's sentence under compassionate release, I must find that Mr. White has exhausted his administrative remedies, has demonstrated "extraordinary and compelling reasons," is not a danger to the safety of others, and find that his release is consistent with § 3553(a) factors. *See e.g., United States v. Howard*, No. 4:15-CR-00018-BR, 2020 WL 2200855, at *2 (E.D.N.C. May 6, 2020); U.S.S.G. § 1B1.13 (2018).

a) Exhaustion of Administrative Remedies and Section 3582(c)(1)(A)

The First Step Act empowers criminal defendants to request compassionate release for "extraordinary and compelling reasons." 18 U.S.C § 3582(c)(1)(A)(i). But before they make such requests, defendants must ask BOP to do so on their behalf and give BOP thirty days to respond. *See* § 3582(c)(1)(A). Upon such a motion from BOP or from a defendant (after BOP denies the request or thirty days has elapsed since the request was filed), a court "may reduce the term of imprisonment…." 18 U.S.C. § 3582(c)(1)(A)(i).

The Government argued in the hearing that Mr. White's request for home confinement on April 9, 2020, was not a request for compassionate release. I determined at the June 9, 2020 hearing that Mr. White's request to the Warden on April 9, 2020 was indeed a request for compassionate release. *See United States v. Nash*, No. 19-40022-01-DDC, 2020 WL 1974305, at *1–2 (D. Kan. Apr. 24, 2020) ("Mr. Nash seeks to serve the remainder of his custody sentence in home confinement under this provision of the CARES Act. Doc. 42 at 1–2. The government responds that Mr. Nash's motion should be construed as a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) …The court agrees with the government."). Because Mr. White sent his request for compassionate release to the Warden on April 9, 2020, *see* Ex. 2 [ECF No. 411], and the Warden did not respond within 30 days, *see* Ex. 4 [ECF No. 411], Mr. White has satisfied administrative exhaustion.

b) **Extraordinary and Compelling Reasons**

Once an inmate has satisfied administrative exhaustion, courts may reduce their sentences upon a finding of "extraordinary and compelling reasons." *See* 18 U.S.C. § 3582(c)(1)(A).

There are "disagreements [among district courts] about the precise definition of 'extraordinary and compelling reasons' justifying compassionate release."[2] *United States v. Cotinola*, No. 13-CR-03890-MV, 2020 WL 2526717, at *3 (D.N.M. May 18, 2020). But many courts have found "extraordinary and compelling" reasons "supporting release on the basis of a combination of dire prison conditions and underlying health conditions that increase the likelihood of severe illness from COVID-19."[3] *Bass*, 2020 WL 2831851, at *7 (citing *e.g.*, *Rodriguez*, 2020 WL 1627331,

---

[2] The specific extraordinary and compelling reasons listed in the Sentencing Guidelines for BOP to consider include i) the defendant is suffering from a terminal or serious medical condition; ii) age of defendant; iii) family circumstances of defendant; and iv) "other reasons." U.S.S.G. § 1B1.13; *United States v. Bass*, No. 1:10-CR-166 (LEK), 2020 WL 2831851, at *3–4 (N.D.N.Y. May 27, 2020). "Following the passage of the First Step Act, courts may independently determine whether such 'other reasons' are present in a given case, without deference to the determination made by the BOP." *United States of America v. Thaher,* No. 17 CR. 302-3 (KPF), 2020 WL 3051334, at *4 (S.D.N.Y. June 8, 2020).

[3] "Section 1B1.13 of the United States Sentencing Guidelines contains the only policy statement issued by the Sentencing Commission pertaining to compassionate release," which has not been updated since the passage of the First Step Act. *See Bass*, 2020 WL 2831851, at *3; U.S.S.G. § 1B1.13.[3] Thus, courts have taken this to mean that "there does not currently exist, for purposes of satisfying the First Step Act's 'consistency' requirement, an 'applicable policy statement.'" *See e.g., United States v. Redd*, 2020 WL 1248493, at *6 (E.D. Va. Mar. 16, 2020); *United States v. Brant*, No. 218CR20155TGBMKM1, 2020 WL 2850034, at *4 (E.D. Mich. June 2, 2020); *United States v. Brooks*, No. 07-CR-20047-JES-DGB, 2020 WL 2509107, at *3 (C.D. Ill. May 15, 2020).

8

at *9 (finding an "extraordinary and compelling reason" on the basis of the inmate's diabetes, high blood pressure, and liver abnormalities, the outbreak at FCI Elkton, and the short period remaining on his sentence); *United States v. Sawicz*, No. 08-CR-287 (ARR), 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's hypertension and conditions at FCI Danbury); *United States v. Foreman*, No. 19-CR-62, 2020 WL 2315908, at *2–4 (D. Conn. May 11, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's hypertension and age of 58, in combination with conditions at FCI Danbury); *United States v. Scparta*, No. 18-CR-578 (AJN), 2020 WL 1910481, at *2, 9 (S.D.N.Y. Apr. 20, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's hypertension, age of 55, and conditions at FCI Butner, which had 60 infected inmates); *United States v. Soto*, No. 18-CR-10086, 2020 WL 2104787, at *2 (D. Mass. May 1, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's hypertension and the presence of 27 reported inmate cases in his facility); *United States v. Pena,* No. 15-CR-551, 2020 WL 2301199, at *3, 4 (S.D.N.Y. May 8, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's hypertension and hyperlipidemia and the presence of 43 confirmed cases at "the most heavily populated BOP facility"); *United States v. Campagna*, No. 16 CR. 78-01 (LGS), 2020 WL 1489829, at *1 (S.D.N.Y. Mar. 27, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's

9

immunocompromization and the nature of the facility, in which "the residents—some of whom, including Defendant, work off-site on week days and stay with their families on weekends—cycle in and out of the facilities from all over the district, and staff at the facilities leave and return daily, without screening"); *United States v. Jenkins*, No. 99-CR-00439-JLK-1, 2020 WL 2466911, at *5 (D. Colo. May 8, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's obesity and history of strokes in a facility with one reported case); *United States v. Kelly*, No. 13-CR-59, 2020 WL 2104241, at *7–8, 10 (S.D. Miss. May 1, 2020) (finding an "extraordinary and compelling reason" solely on the basis of conditions at the low-security facility BOP facility in Oakdale, also named in the April 3 Memo, despite the inmate's young age and lack of any other risk factors for severe illness); *see also Groups at Higher Risk for Severe Illness*, Ctrs. for Disease Control & Prevention (May 14, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html).

Specifically, courts "have granted release to defendants suffering from hepatitis C, among other conditions." *Stephenson*, 2020 WL 2566760, at *5 (citing *e.g., Miller v. United States*, No. CR 16-20222-1, 2020 WL 1814084, at *1 (E.D. Mich. Apr. 9, 2020)). Hepatitis C weakens the immune system, and "this weakness may continue even after one has been 'cured.'" *Id.* (citing Trinity Coll. Dublin, *How Hepatitis C 'Ghosts' Our Immune System*, Science Daily (June 5, 2019), https://www.sciencedaily.com/releases/2019/06/190605105940.htm, *Chronic*

10

*Hepatitis C Virus Infection Irreversibly Impacts Human Natural Killer Cell Repertoire*, 9 Nature Comm. 2275 (2018), https://www.nature.com/articles/s41467-018-04685-9; *see also Immune System Does Not Recover Despite Cured Hepatitis C Infection*, Karolinska Inst. (June 11, 2018), https://news.ki.se/immune-system-does-not-recover-despite-cured-hepatitis-c-infection). The court in *Stephenson* found extraordinary and compelling reasons existed where a defendant had a weakened immune system and damaged liver caused by Hepatitis C and was being held at a facility with just one confirmed case of COVID-19. *See id.* ("The Court will not brush off those concerns as just another downside of prison. No person deserves such callousness.").

Here, Mr. White argues he satisfies "extraordinary and compelling reasons" for compassionate release because he is immunocompromised—suffering from a liver disease, Hepatitis C. And FCI Elkton, as discussed above, has seen a massive outbreak of COVID-19 cases, with 9 inmate deaths and hundreds infected. In addition, BOP officials specifically identified Mr. White as one of the medically vulnerable inmates. *See* Ex. 1 [ECF No. 411]. The "COVID-19 outbreak at FCI Elkton, in combination with the special difficulty of social distancing in FCI Elkton's dorm-style environment, weighs heavily in the Court's analysis." *Bass*, 2020 WL 2831851, at *7. As I have said many times from the bench, I sentence defendants to prison as punishment, not for punishment. BOP is to be commended for the steps they have taken to control the virus, but the exponential growth of the virus and the

11

deaths of inmates clearly demonstrates that their steps are not enough. Given the inability of BOP to contain the outbreak at FCI Elkton and due to the fact that prison officials placed Mr. White on a list of medically compromised inmates, I find Mr. White is a high risk for COVID-19.

In accordance with numerous other district court decisions, I find extraordinary and compelling reasons exist here for compassionate release. *See e.g., United States v. Jackson*, No. 5:02-CR-30020, 2020 WL 2735724, at *3 (W.D. Va. May 26, 2020) (citing *United States v. Harper*, No. 7:18-cr-25, 2020 WL 2046381, at *1 (W.D. Va. Apr. 28, 2020) (granting compassionate release where defendant had heart disease, asthma, hypertension, and sleep apnea); *United States v. Zukerman*, No. 16-cr-194, 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) (granting compassionate release based on defendant's diabetes and age, paired with the COVID-19 outbreak); *United States v. Colvin*, No. 3:19-cr-179, 2020 WL 1613943, at *1 (D. Ct. Apr. 2, 2020) (granting compassionate release based on defendant's diabetes, paired with the COVID-19 outbreak); *United States v. Gorai*, 2:18-cr-220, 2020 WL 1975372, at *3 (D. Nev. Apr. 24, 2020) ("The court finds that defendant's asthma falls squarely within the ambit of preexisting conditions that the CDC has unambiguously explained place him at greater risk of COVID-19.")); *see also United States v. Brooks*, No. 07-CR-20047-JES-DGB, 2020 WL 2509107, at *5 (C.D. Ill. May 15, 2020) (citing cases where courts have granted compassionate release where the defendant is immunocompromised, *United States v. Robinson*, No. 18-CR-00597-RS-1, 2020 WL

1982872, at *2 (N.D. Cal. Apr. 27, 2020) (defendant was taking immunosuppressants); *United States v. Edwards*, No. 6:17-CR-00003, 2020 WL 1650406, at *4 (W.D. Va. Apr. 2, 2020) (defendant was immunocompromised due to brain cancer, chemotherapy, and steroid prescription)).

### c) Danger and Safety to the Community and Section 3553(a) Factors

The relevant policy statement under United States Sentencing Guideline § 1B1.13 requires that for a reduction in the term of imprisonment under 18 U.S.C. § 3582(c)(1)(A), a court must find that the "defendant is not a danger to the safety of others or the community" and consider the § 3553(a) factors. *Howard*, 2020 WL 2200855, at *2. Section 3142(g) sets out factors to help with the dangerousness assessment, including the following:

> (1) "the nature and circumstances of the offense charged;" (2) "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, ... community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history;" and (3) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

*Bass*, 2020 WL 2831851, at *8 (quoting § 3142(g)).

Moreover, when a court grants a sentence reduction, it "may impose a term of ... supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." 18 U.S.C. § 3582(c)(1)(A). "In doing so, the court may modify an existing term of supervised release to add a period of home detention, only if it finds that home detention is a 'substitute for imprisonment.'" *United States v. Alvarado*, No. 18-CR-283 (NEB/TNL), 2020 WL

13

3041504, at *2 (D. Minn. May 27, 2020) (citing U.S.S.G. § 5F1.2; 18 U.S.C. § 3583(e)(2) (providing that the court may "extend a term of supervised release if less than the maximum authorized term was previously imposed" and "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release")). Furthermore, "reducing Defendant's sentence to time-served is consistent with the goals of sentencing and does not second-guess or relitigate this Court's original judgment." *See United States v. Rodriguez*, No. 17-CR-157 (VEC), 2020 WL 3051443, at *4 (S.D.N.Y. June 8, 2020).

Mr. White's crimes were serious, as reflected by the five year sentence. However, Mr. White's substantive crime is nonviolent, and he was not the ring leader of the drug conspiracy. *See Sawicz*, 2020 WL 1815851, at *3 (finding that "the defendant d[id] not pose ... a danger to the public" in part because "neither the violation on which the defendant is currently serving his prison sentence nor the conduct involved in the underlying crime involved violence"). Mr. White has argued that he joined the conspiracy to support his own addiction. Further, Mr. White has had a clean disciplinary record while in prison and has completed drug and substance abuse counseling offered by BOP. I have considered the § 3553(a) factors and find release to home incarceration will reflect the seriousness of the offenses, promote respect for the law, and provide just punishment for the defendant's crimes. *See Campagna* 2020 WL 1489829 at *1 (finding home detention was a substitute for imprisonment satisfying the § 3553(a) factors). I further find Mr. White is not likely

14

to pose a risk to others or the community if released. *See Rodriguez*, 2020 WL 3051443, at *4 (finding the defendant did not pose a danger where the defendant "does not appear to have incurred disciplinary infractions since he was sentenced, and has instead consistently taken advantage of dozens of courses offered by BOP").

### d) Conclusion

Defendant's motion for compassionate release, [ECF No. 405], is **GRANTED.** Mr. White's sentence is **modified to TIME SERVED to be followed by a 4 year term of supervised release with the first 8 months to be served on home incarceration**. Mr. White is to be released **IMMEDIATELY**. All previously imposed conditions of supervised release apply. During the period of home incarceration, Mr. White is restricted to a 24-hour-a day lock-down at his residence except for medical necessities and court appearances or other activities specifically approved by the court. He has provided to the court that his address for home incarceration will be 1744 Left Fork Buck Run, Mineral Wells, WV 26150.

The court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, the United States Marshal, and FCI Elkton 8730 Scroggs Rd., Lisbon, OH 44432.

ENTER: June 12, 2020

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE